UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF MANAGEMENT AND BUDGET and U.S. DEPARTMENT OF JUSTICE,<br><br>Defendants. | Civil Action No.: 1:25-cv-08783<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Knight First Amendment Institute at Columbia University ("Plaintiff") brings this action against Defendants Office of Management and Budget ("OMB") and U.S. Department of Justice ("DOJ") (collectively, the "Defendants") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. Since January 2025, President Donald Trump has undertaken an unprecedented campaign to punish law firms whose clients, causes, or personnel he disfavors. Through a series of executive orders and presidential memoranda, the Trump Administration has directed federal agencies to target individual firms, including by scrutinizing their internal employment policies.

3. Acting pursuant to one such order, the U.S. Equal Employment Opportunity Commission ("EEOC"), led by Acting Chair Andrea Lucas ("Chair Lucas"), requested diversity, equity, and inclusion ("DEI") data from 20 of the nation's leading law firms.[1]

---

[1] Press Release, U.S. Equal Employment Opportunity Comm., EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices

4.      By April 11, 2025, at least nine of these law firms—under pressure of presidential directive and regulatory inquiry—capitulated by striking agreements with the Trump Administration or curtailing DEI programs that the White House signaled it might declare unlawful.[2]

5.      Despite the significance of these agreements to public understanding of the Trump Administration's efforts to punish its political opponents, the agreements are not public. To fill that gap, on May 14, 2025, Plaintiff requested from Defendants and others records related to agreements that were negotiated (or that were in the process of being negotiated) between the Trump Administration and the law firms, as well as the terms thereof. In addition, as it relates to Defendants, Plaintiff requested communications between Defendants and the EEOC and between Defendants and the targeted law firms concerning the aforementioned agreements. The FOIA request is attached as Exhibit 1 to the Declaration of Deanna Paul ("Paul Decl."), at 5-6.

6.      Plaintiff commenced this action because Defendants have denied or constructively denied Plaintiff's request by failing to process and/or release responsive records within the timeline mandated by FOIA.

---

(Mar. 17, 2025), https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei.

[2] *See* Press Release, U.S. Equal Employment Opportunity Comm., In EEOC Settlement, Four 'BigLaw' Firms Disavow DEI and Affirm Their Commitment to Merit-Based Employment Practices (Apr. 11, 2025), https://www.eeoc.gov/newsroom/eeoc-settlement-four-biglaw-firms-disavow-dei-and-affirm-their-commitment-merit-based; Jamie Raskin, Ranking Member, H. Comm. on the Judiciary, Richard Blumenthal, Ranking Member, S. Permanent Subcomm. on Investigations, & Robert Scott, Ranking Member, H. Comm. on Educ. & the Workforce, Letter to Andrea Lucas, Acting Chair, EEOC (Jul. 9, 2025), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2025-07-09-raskin-blumenthal-scott-to-lucas-eeoc%29-law-firms.pdf ("[B]etween March 21, 2025, and April 11, 2025, nine law firms entered into agreement with the Trump Administration").

7. FOIA authorizes a requester to seek immediate judicial review if an agency fails to respond to the request within the statutory time limit for a response.[3]

8. Plaintiff seeks the injunctive relief necessary to ensure Defendants' compliance with FOIA's requirements.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii), and 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

11. Plaintiff, the Knight First Amendment Institute at Columbia University ("Plaintiff"), is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Public education is essential to the Plaintiff's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities Plaintiff was established to conduct. Plaintiff is a 501(c)(3) corporation headquartered at 475 Riverside Drive in New York, New York, and is a "person" within the meaning of 5 U.S.C. § 551(2).

---

[3] *See* 5 U.S.C §§ 552(a)(4)(B), (a)(6)(C)(i); *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. United States Dep't of State*, 300 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) ("An agency's failure to comply with [the statute's] time limits may be treated as constructive exhaustion of administrative remedies, and authorizes the requester to seek judicial review immediately.") (internal quotation marks omitted); *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017) ("When, as here, an agency does not respond to a FOIA request in accordance with the time period specified by the statute, a requester may seek judicial review 'to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld.'") (quoting 5 U.S.C. § 552(a)(4)(B)).

12. Defendant Office of Management and Budget ("OMB") is a department of the executive branch of the U.S. government and is an "agency" within the meaning of 5 U.S.C. § 552(f), which has the responsibility for overseeing the management of federal financial assistance, including by establishing policies and requirements. *See* 31 U.S.C. §§ 503(a), 504.

13. Defendant U.S. Department of Justice ("DOJ") is a department of the executive branch of the U.S. government and is an "agency" within the meaning of 5 U.S.C. § 552(f). DOJ and its components, the Office of Legal Counsel ("OLC") and the Office of Information Policy ("OIP"), have possession and control over requested records.

## FACTUAL ALLEGATIONS

### A. President Trump's Executive Orders and the EEOC Letters

14. In early 2025, President Trump escalated his use of executive authority to single out law firms in response to the firms' representation of clients and causes that he opposes or for previously employing attorneys he dislikes.

15. One such directive was a March 6, 2025 Executive Order expressly targeting Perkins Coie LLP because the firm held "positions with which [President Trump] disagrees." Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 11, 2025). That order instructed the EEOC to examine the practices of "large, influential, or industry leading law firms" for purported violations of Title VII.[4]

---

[4] Press Release, President Donald J. Trump, Addressing Risks from Perkins Coie LLP (Mar. 6, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-perkins-coie-llp.

16. Eleven days later, on March 17, 2025, Chair Lucas sent letters to 20 major law firms (the "EEOC Letters"), requesting information about their DEI programs in order to assess whether the initiatives disadvantaged white or male employees, applicants, or trainees.[5]

17. Within two weeks, President Trump announced that Skadden, Arps, Slate, Meager & Flom LLP ("Skadden"), a law firm among those that received the EEOC Letters, entered into an agreement with the Administration whereby, among other things, it purportedly promised to pursue "merit-based hiring, promotion and retention," hire fellows as part of a scholarship fund, and commit $100 million in pro bono work to support the Trump Administration's legal causes;[6] by April, Skadden had canceled all future events for the firm's employee affinity groups and removed mentions of those groups from its website.[7]

18. At least nine law firms that received the EEOC Letters reportedly struck deals with the Trump Administration,[8] committing to, among other things, "no longer categorize any lawful employment or practices (including those addressing equal employment opportunity, accessibility, or reasonable accommodation for religion, disability, or pregnancy) as DEI" and not engage in

---

[5] Andrea Lucas, Acting Chair, EEOC, Letters to Targeted Firms (Mar. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-03/Law_Firm_Letters_-_03.17.2025.pdf; Press Release, U.S. Equal Employment Opportunity Comm., EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices (Mar. 17, 2025), https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei.

[6] *See* @realDonaldTrump, TRUTH SOCIAL (Mar. 28, 2025), https://truthsocial.com/@realDonaldTrump/posts/114241348699704594; Ella Lee, *Trump Gets $100M Deal with Skadden Law Firm Amid Pressure Campaign*, THE HILL (Mar. 28, 2025), https://thehill.com/homenews/administration/5220137-trump-skadden-100-million-pro-bono.

[7] *See* Tatyana Monnay, Skadden Dumps Employee Affinity Groups After Deal With Trump, BLOOMBERG Law (Apr. 8, 2025), https://news.bloomberglaw.com/business-and-practice/skadden-dumps-employee-affinity-groups-after-deal-with-trump.

[8] Paul Decl., Ex. 1 at 4, n. 15; *see also* Raskin, et al., Letter to Andrea Lucas, *supra* n. 2.

5

unlawful discrimination, "including in any policies, programs, and practices previously labeled, characterized, or framed as a diversity or DEI program."[9] Other law firms took steps to revise or scrap diversity-based initiatives that the Administration might deem illegal.[10] For example, Sidley Austin changed the title of its "chief diversity equity officer" to "chief inclusion officer;" Greenberg Traurig took down references on its website to the firm's affinity groups; and DLA Piper disbanded its minority organizations and affinity groups.[11]

### B. Plaintiff's FOIA Request

19. On May 14, 2025, Plaintiff submitted a FOIA request to Defendants for two categories of records related to agreements that were negotiated (or that are being negotiated) between the Trump Administration and a "Targeted Firm,"[12] as well as the terms thereof. These two categories of documents are hereinafter referred to as the "Requested Documents."

20. Additionally, Plaintiff asked Defendants to disclose all segregable portions of otherwise exempt records pursuant to 5 U.S.C. § 552(b).

21. As is relevant here, the FOIA request includes a request for:

   a. Agreements, created on or after January 20, 2025, between the Trump administration and any Targeted Firm. To the extent that any Agreement is not memorialized in a single document, all records sufficient to show all terms of that Agreement.[13]

---

[9] Press Release, U.S. Equal Employment Opportunity Comm., In EEOC Settlement, Four 'BigLaw' Firms Disavow DEI and Affirm Their Commitment to Merit-Based Employment Practices, *supra* n. 2.

[10] *See, supra*, n. 7.

[11] *Id.*

[12] "Targeted Firm" refers to any law firm that was either the subject of an executive order or the recipient of the EEOC Letter, or had negotiated (or is negotiating) an agreement with the Trump Administration. Paul Decl., Ex. 1, at 5, n. 18.

[13] "Agreements" refer to any final written and/or oral agreement between the Trump Administration and the Targeted Firms in which any firm made an admissions and/or commitment

6

      b. All records, created on or after January 20, 2025, related to the terms of the Trump Administration's Agreements with any Targeted Firm, including:

          i. All communications between any Targeted Firm and OMB, the EEOC, and/or DOJ, concerning the Agreements or any terms thereof.

          ii. All communications between or among the White House, OMB, the EEOC, and/or DOJ, concerning the Agreements or terms thereof.

22. Plaintiff also requested a waiver of document search, review, and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A).[14] Plaintiff is entitled to such fee waiver because disclosure of the requested records is in the public interest—specifically, disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[15] Additionally, Plaintiff qualifies under 5 U.S.C. § 552(a)(4)(A)(ii)(II) as an "educational . . . institution" whose purposes include "scholarly . . . research."

23. Although Plaintiff's FOIA request also sought expedited processing, pursuant to U.S.C. § 552(a)(6)(E), Plaintiff does not seek this Court's intervention in connection therewith.

C. **Defendants' Responses**

    i. ***Defendant OMB***

---

to avoid or minimize the possibility that either the Trump Administration would issue an executive order against it or that the EEOC would open an investigation into whether its employment practices violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. "Agreements" encompass oral agreements. As such, the Request also seeks records that memorialize the Trump Administration's understanding of the oral terms of the Agreements.

[14] Paul Decl., Ex. 1, at 7-8.

[15] 5 U.S.C. § 552(a)(4)(A)(iii).

24. On May 14, 2025, Plaintiff received a system-generated email from OMB's FOIA Office, acknowledging receipt of the FOIA request and stating that OMB "will provide further information where appropriate."[16]

25. Pursuant to 5 U.S.C § 552(a)(6), each agency must determine within 20 business days whether to comply with a FOIA request. Under certain "unusual circumstances," federal law grants agencies an additional 10 business days.[17] OMB's 20-business-day deadline to respond to the FOIA request was June 12, 2025, and OMB did not issue a response on or before June 12, 2025, or in the ten business days thereafter.

26. To date, OMB has neither contacted Plaintiff nor provided it with additional information.

27. An agency's failure to respond within the statutory time limit amounts to a constructive denial, and FOIA authorizes the requester to seek immediate judicial review.[18]

　　*ii.*　***Defendant DOJ***

28. On May 16, 2025, DOJ's Mail Referral Unit, which handles requests made under FOIA, sent Plaintiff an email acknowledging receipt of its FOIA request.[19] The email requested additional information to help identify the DOJ components most likely to have the Requested Documents.

---

[16] Paul Decl., Ex. 2.

[17] 5 U.S.C § 552(a)(6)(B)(i).

[18] *See, supra*, n. 3.

[19] Paul Decl., Ex. 3.

29. On May 22, 2025, Plaintiff responded to DOJ's Mail Referral Unit with suggestions regarding which DOJ components may have the Requested Documents.[20]

30. On May 27, 2025, DOJ's Mail Referral Unit confirmed that Plaintiff's request had been referred to three DOJ components: (1) the Office of Information Policy ("OIP"), (2) the Civil Division,[21] and (3) Office of Legal Counsel ("OLC").[22] Federal agencies are required to respond to FOIA requests within 20 business days, beginning on the earlier of either the date the request was received by the component within DOJ that maintains the records sought (*i.e.*, 20 business days from May 27, 2025 is June 25, 2025), or 10 business days after the request was first received by the Mail Referral Unit (*i.e.*, 20 business days from May 30, 2025 is June 30, 2025). Therefore, DOJ's deadline to respond to the FOIA request was June 25, 2025, which was 20 business days from receipt of the FOIA request by each DOJ component office on May 27, 2025.

31. To date, OLC has not contacted Plaintiff or provided it with any information.

32. Failure to respond within the statutory time limits amounts to a constructive denial, authorizing the requester to seek immediate judicial review.[23]

33. In a letter dated June 5, 2025, OIP informed Plaintiff that its request fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii), and that OIP needed to "extend the time limit to respond to your request beyond the ten additional days provided by the

---

[20] Paul Decl., Ex. 4.

[21] In a letter dated August 4, 2025, the Civil Division informed Plaintiff that no responsive records were located in the Civil Division's Office of the Assistant Attorney General and Federal Programs Branch. Paul Decl., Ex. 5. Therefore, the instant Complaint does not concern the Civil Division.

[22] Paul Decl., Ex. 6.

[23] *See, supra*, n. 3.

statute."[24]  The letter denied Plaintiff's request for expedited processing and stated that OIP had assigned the request to "the complex track."[25]  OIP's letter did not provide an estimated date for production.  However, the letter stated that, to "speed up [OIP's] process," Plaintiff could "agree to an alternative time frame for processing" or "narrow the scope of [its] request."[26]  Additionally, the letter stated that OIP would make a decision about the application of fees "only after we determine whether fees will be implicated for this request."[27]  OIP's letter did not provide any time frame for such a decision.

34. In an attempt to modify the scope of the FOIA request or arrange an alternative time frame for processing, and as required under 5 U.S.C. § 552(a)(6)(B)(ii), counsel for Plaintiff contacted Acting FOIA Public Liaison Eric Hotchkiss.

35. During a phone call on July 23, 2025, Hotchkiss informed counsel for Plaintiff that the average processing time for a complex FOIA request at OIP is over 600 days,[28] and that typically complex FOIA requests could take between four and five months for the OIP record custodian to conduct an initial search for responsive records.  Hotchkiss stated that OIP would contact Plaintiff once the initial search was conducted.  Until that time, OIP could neither agree to

---

[24] Paul Decl., Ex. 7.

[25] *Id.*

[26] *Id.; see also* 5 U.S.C. § 552(a)(6)(B)(ii).

[27] Paul Decl., Ex. 7.

[28] *See* U.S. Dep't of Just., Office of Info. Pol'y, Dep't of Just. Annual FOIA Report Summary, Fiscal Year 2024 (Mar. 7, 2025), https://www.justice.gov/oip/department-justice-annual-foia-report-fy-2024 (in 2024, the average processing time for a complex FOIA request at DOJ's OIP was 650.57 days).

an alternative time frame for processing nor discuss narrowing the scope of the request or whether there were responsive records.[29]

36. To date, OIP has not contacted Plaintiff or provided it with additional information.

37. An indefinite delay—here, up to two years without a final determination and where OIP has refused to engage with Plaintiff regarding an alternative time frame for processing or narrowing the scope of the request—is tantamount to a constructive denial of a FOIA request.

## CAUSES OF ACTION

### COUNT 1

**Violation of FOIA—5 U.S.C. § 552**
**Failure to Respond to Plaintiff's Request and Make Agency Records Available**
**(*Against All Defendants*)**

38. Plaintiff re-alleges paragraphs 1 through 37 as if fully set forth herein.

39. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), an agency is required to make a determination on a FOIA request within 20 business days of receipt of such request and "shall immediately notify the person making such request of [] such determination and the reasons therefor."

40. Under 5 U.S.C. § 552(a)(6)(B)(i), an agency may extend the deadline to make that determination by 10 business days if "by written notice" it asserts that there are "unusual circumstances" and if it asserts "the date on which a determination is expected to be dispatched."

41. Defendants' failure to unconditionally grant Plaintiff's request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. §§ 552(a)(4)(A)(ii)(II), (iii), and Defendants' corresponding regulations.

---

[29] *See* 5 U.S.C. §§ 552(a)(6)(B)(ii), (C)(iii).

42. **Defendant OMB** failed to timely respond to Plaintiff's request in violation of FOIA, 5 U.S.C. § 552(a)(6)(A), as well as Defendant's corresponding regulations.

43. Defendant OMB did not assert "unusual circumstances." It was therefore required to make a determination on Plaintiff's request within the 20 business days. Defendant OMB's failure to issue a determination within the statutory period constitutes a constructive denial of the request and violates FOIA, 5 U.S.C. § 552(a)(6)(A), as well as Defendant's corresponding regulations.

44. **Defendant DOJ (OLC)** failed to timely respond to Plaintiff's request in violation of FOIA, 5 U.S.C. § 552(a)(6)(A), as well as Defendant's corresponding regulations.

45. Defendant DOJ (OLC) did not assert "unusual circumstances." It was therefore required to make a determination on Plaintiff's request within the 20 business days. Defendant DOJ (OLC)'s failure to issue a determination within the statutory period constitutes a constructive denial of the request and violates FOIA, 5 U.S.C. § 552(a)(6)(A), as well as Defendant's corresponding regulations.

46. **Defendant DOJ (OIP)** failed to timely respond to Plaintiff's request in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)-(B), as well as Defendant's corresponding regulations.

47. Under 5 U.S.C. § 552(a)(6)(B), because Defendant DOJ (OIP) asserted "unusual circumstances," it was required either to make a determination within 30 business days after receipt of the request or provide Plaintiff the opportunity to limit the scope of the request so that it may be processed within that time limit or to arrange with the agency an alternative time frame for processing. However, Defendant DOJ (OIP) did neither, in violation of FOIA, 5 U.S.C. § 552(a)(6)(B), as well as Defendant's corresponding regulations.

48. Defendant DOJ (OIP)'s stated indefinite delay—up to two years without a final determination and where OIP has refused to engage with Plaintiff regarding an alternative time frame for processing or narrowing the scope of the request—is tantamount to a constructive denial of a FOIA request and violates FOIA, 5 U.S.C. § 552(a)(6)(A)-(B), as well as Defendant's corresponding regulations.

49. Plaintiff has exhausted administrative remedies with respect to its FOIA request of all Defendants pursuant to 5 U.S.C. § 552(a)(6)(C).

50. Plaintiff has a right of access to the Requested Documents under 5 U.S.C. § 552(a)(3), and there is no legal basis for Defendants to withhold them.

51. Defendants are improperly withholding agency records responsive to Plaintiff's request.

52. Defendants' failure to make records responsive to the request promptly available violates FOIA, 5 U.S.C. § 552(a)(3)(A), as well as Defendants' corresponding regulations.

53. Plaintiff is being harmed by Defendants' unlawful withholding of the Requested Documents, and Plaintiff will continue to be harmed unless Defendants are compelled to conform their conduct to the requirements of the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendants to conduct a thorough search for records responsive to Plaintiff's request;

B. Declare that Defendants have violated FOIA by improperly withholding the Requested Documents and order Defendants to immediately process and release any responsive records pursuant to 5 U.S.C. §§ 552(a)(4)(B), (6)(E);

C. Enjoin Defendants from withholding the Requested Documents and order production of the Requested Documents to Plaintiff pursuant to 5 U.S.C. § 552(a)(4)(B) promptly and by a date certain;

D. Enjoin Defendants from charging Plaintiff search, review, or duplication fees for the processing of Plaintiff's request.

E. Award Plaintiff its reasonable costs and attorneys' fees incurred in this action; and;

F. Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 23, 2025

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: _____
Deanna M. Paul
250 Vesey Street, 27th Floor
New York, New York 10281
Tel: (212) 335-2032
dpaul@wmhwlaw.com

*Attorney for Plaintiff*