# EXHIBIT 1



475 Riverside Drive, Suite 302
New York, NY 10115

(646) 745-8500

info@knightcolumbia.org

May 14, 2025

Michele Holt
FOIA Public Liaison
Office of Management and Budget
725 17th Street NW, Suite 9272
Washington, DC 20503
OMBFOIA@omb.eop.gov

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

Michael L. Heise
Equal Employment Opportunity Commission
Office of Legal Counsel
FOIA Programs
131 M Street NE, Suite 5NW22B
Washington, DC 20507
foia@eeoc.gov

      **Re:   Freedom of Information Act Request**
             **Expedited Processing Requested**

To whom it may concern,

    The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute")[1] submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the agreements,

---

[1] The Knight First Amendment Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

and records related to the agreements, made between the Trump administration and a number of major law firms.

The Knight Institute seeks these records to inform the public of the terms and scope of the Trump administration's unprecedented agreements with the law firms, under which the firms have reportedly agreed to provide hundreds of millions of dollars in pro bono legal assistance to causes supported by the administration, and to take steps to ensure that the firms do not engage in any "illegal" "DEI" (Diversity, Equity, and Inclusion) practices. The full scope of these agreements, which implicate not just the affected firms' legal and ethical obligations but also the public interest in ensuring that law firms are able to engage in pro bono representation free from government interference, is of paramount public interest.

## I. Background

Since February 2025, the Trump administration has issued several executive orders and presidential memoranda directing federal agencies to impose punitive measures on individual law firms in retaliation for the firms' representation of clients and causes that President Trump opposes, or for previously employing attorneys he disfavors. To date, the Trump administration has issued executive orders and presidential memoranda targeting: Covington & Burling; Jenner & Block; Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"); Perkins Coie; Susman Godfrey; and Wilmer Cutler Pickering Hale and Dorr ("WilmerHale").[2]

Through these executive orders and memoranda, President Trump directed the government to take certain punitive actions against the targeted law firms, including: (1) suspending security clearances of the firms' employees; (2) identifying and canceling government contracts with the firms; (3) identifying and canceling contracts with any contractors that do business with the firms; (5) denying the firms' employees access to all federal government buildings; (6) prohibiting federal employees from engaging with the firms' employees; and/or (7) prohibiting the federal government from hiring the firms' employees.[3]

---

[2] *See* Exec. Order No. 14,230, 90 Fed. Reg. 11781, Addressing Risks from Perkins Coie LLP (Mar. 6, 2025); Exec. Order No. 14,237, 90 Fed. Reg. 13039, Addressing Risks from Paul Weiss, (Mar. 14, 2025); Exec. Order No. 14,246, 90 Fed. Reg. 13997, Addressing Risks from Jenner & Block, (Mar. 25, 2025); Exec. Order No. 14250, 90 Fed. Reg. 14,549, Addressing Risks from WilmerHale, (Mar. 27, 2025); Exec. Order No. 14,263, 90 Fed. Reg. 15615, Addressing Risks from Susman Godfrey (Apr. 9, 2025); Presidential Memorandum, *Suspension of Security Clearances and Evaluation of Government Contracts*, White House (Feb. 25, 2025), https://perma.cc/5QXG-BW4P.

[3] *See supra,* note 2.

In addition to the executive orders and presidential memoranda targeting law firms, on March 17, 2025, the Equal Employment Opportunity Commission ("EEOC") sent letters to 20 law firms requesting extensive information about the firms' so-called DEI-related employment practices.[4]

To date, four law firms have filed legal challenges to the executive orders.[5] Courts have issued temporary restraining orders in three of the four legal challenges.[6] In the case brought by Perkins Coie, the court granted the firm's motion for summary judgment, holding that the Trump administration's "unprecedented attack" on the legal profession is unconstitutional.[7] The court noted that "[u]sing the powers of the federal government to target lawyers for their representation of clients and avowed progressive employment policies in an overt attempt to suppress and punish certain viewpoints, however, is contrary to the Constitution . . . ."[8]

One of the six firms targeted by an executive order, Paul Weiss, reached an agreement with the Trump administration in which the firm reportedly made certain admissions and commitments in exchange for the administration's agreement to revoke the executive order.[9] According to the revocation order, Paul Weiss agreed to acknowledge the supposed wrongdoing of a former partner, adopt a policy of "political neutrality with respect to client selection and attorney hiring," represent the "full political spectrum" in taking on pro bono matters, allocate $40 million in pro bono services to support causes such as "veterans, fairness in the justice system, and combating anti-Semitism," and end "diversity, equity, and inclusion" hiring policies.[10]

---

[4] *See* Press Release, Equal Employment Opportunity, EEOC Acting Chair Adres Lucas Sends Letters to 20 Law Firms Requesting Information about DEI-Related Employment Practices (Mar. 17, 2025), https://perma.cc/W3ZE-PMQV.

[5] Mike Scarcella, Sara Merken, & David Thomas, *Law Firm Targeted by Trump Sues as Five Other Top Firms Make Deals*, Reuters (Apr. 11, 2025), https://perma.cc/Y87T-HT23.

[6] *See* Ryan Lucas, *Federal Judge Strikes Down Trump Order Targeting the Law Firm Perkins Coie*, NPR (May 2, 2025), https://perma.cc/T3EH-Y4BU.

[7] *Perkins Coie LLP v. DOJ*, No. 25-716, 2025 WL 1276857, at *2–3 (D.D.C. May 2, 2025).

[8] *Id.* at *3.

[9] *See* Brianna Tucker, *Law Firm Paul Weiss Agrees to Deal with Trump, Prompting Criticism*, The Washington Post (Mar. 24, 2025), https://perma.cc/5VWB-JUDW.

[10] *See* Exec. Order No. 14,244, 90 Fed. Reg. 13685, Addressing Remedial Action by Paul Weiss, (Mar. 21, 2025).

Following Paul Weiss's agreement with the Trump administration, a number of other law firms preemptively reached similar agreements with the administration to avoid retribution.[11] For example, Skadden, Arps, Slate, Meager & Flom LLP ("Skadden") committed $100 million in pro bono work to support the Trump administration's legal causes and promised to pursue "merit-based hiring, promotion and retention."[12] A&O Shearman; Cadwalader, Wichersham & Taft; Kirkland & Ellis; Latham & Watkins; Millbank; Simpson Thacher & Bartlett; and Willkie Farr & Gallagher ("Willkie") also reached similar agreements with the Trump administration.[13]

The exact terms of these agreements, however, have not been made public. The Trump administration has revealed certain details about the agreements in recent statements. For example, in a new executive order, President Trump directed the Department of Justice to create a program that provides "private-sector pro bono assistance" to law enforcement officers accused of misconduct.[14] The President has also suggested that he may use the firms' pro bono commitments to help with tariff negotiations and to draft leases for the coal industry.[15] Other members of the Trump administration have echoed that claim.[16] But significant questions about the exact terms of the agreements, and the administration's plans to enforce or implement the agreements, remain.

---

[11] *See* Sam Levine, *Two More Law Firms Reach Deals with Trump to Avoid Executive Orders: 'They're All Bending,'* The Guardian (Apr. 2, 2025), https://perma.cc/8D9K-CHYS.

[12] *See* Ella Lee, *Trump Gets $100M Deal with Skadden Law Firm Amid Pressure Campaign*, The Hill (Mar. 28, 2025), https://perma.cc/ZWE9-H6NL.

[13] *See* Matthew Goldstein, *Five More Big Law Firms Reach Deals With Trump*, N.Y. Times (Apr. 11, 2025), https://perma.cc/2EDJ-P3FH.

[14] *See* Exec. Order No. 14,288, 90 Fed. Reg. 18765, Strengthening and Unleashing America's Law Enforcement to Pursue Criminals and Protect Innocent Citizens (Apr. 28, 2025).

[15] *See* Meridith McGraw, *Trump Floats Enlisting Law Firms for Pro Bono Help with Tariffs*, Wall Street Journal (Apr. 8, 2025), https://perma.cc/A6ZQ-U6ZL; Michael S. Schmidt, Maggie Haberman, Matthew Goldstein, Jessica Silver-Greenberg, Ben Protess, & William K. Rashburn, *Law Firms Made Deals with Trump. Now He Wants More From Them.*, N.Y. Times (Apr. 16, 2025), https://perma.cc/6LKE-UWNR.

[16] Ben Protess, Maggie Haberman, & Michael S. Schmidt, *How Trump is Putting Law Firms in a No-Win Situation*, N.Y. Times (Apr. 9, 2025), https://perma.cc/BT6B-D4QJ (noting statement by White House Press Secretary Karoline Leavitt that "Big Law continues to bend the knee to President Trump because they know they were wrong, and he looks forward to putting their pro bono legal concessions toward implementing his America First agenda").

The Knight Institute thus files this request to inform the public about the agreements between the Trump Administration and the targeted law firms.

## II. Records requested

The Knight Institute seeks the release of the following records created on or after January 20, 2025:

1. The Agreements[17] between the Trump administration and any Targeted Firm.[18] To the extent that any Agreement is not memorialized in a single document, we request all records sufficient to show all terms of that Agreement.

2. All records related to the terms of the Trump administration's Agreements with any Targeted Firm, including:

    a. All communications between any Targeted Firm and (a) the Office of Management and Budget, (b) the Equal Opportunity Employment Commission, and/or (c) the Department of Justice, concerning the Agreements or any terms of the Agreements.

    b. All communications between or among the (a) White House, (b) the Office of Management and Budget, (c) the Equal Opportunity Employment Commission, and/or (d)

---

[17] The term "Agreements" includes the final written and/or oral agreements between the Trump administration and the Targeted Firms in which any firm made certain admissions and commitments to avoid or minimize the possibility that the Trump administration would issue an executive order or that the EEOC would investigate whether the firm's employment practices comply with Title VII the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. With respect to oral agreements, the Request seeks records that memorialize the Trump administration's understanding of the oral terms of the Agreements.

[18] The Knight Institute uses the term Targeted Firm to refer to (1) any law firm that has been targeted by an executive order issued by President Trump (*e.g.*, Exec. Order No. 14237, 90 Fed. Reg. 13039, Addressing Risks from Paul Weiss, (Mar. 14, 2025)) or an investigative letter from EEOC Acting Chair Andrea Lucas (*e.g.*, Letter from Andrea Lucas, Acting Chair, EEOC, to Rachel Proffitt, Chief Executive Officer, Cooley LLP (Mar. 17, 2025) https://perma.cc/M7KF-V5QH); and (2) any firm that has negotiated, or is negotiating, an Agreement with the Trump administration. The term Targeted Firm includes, at a minimum, the following law firms: Allen Overy Shearman Sterling US LLP; Cadwalader, Wichersham & Taft LLP; Kirkland & Ellis LLP; Latham & Watkins LLP; Millbank LLP; Paul, Weiss Rifkind, Wharton & Garrison LLP; Simpson Thacher & Bartlett LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Willkie Farr & Gallagher LLP; and all firms that received letters from EEOC Acting Chair Andrea Lucas on March 17, 2025, *see supra* note 4.

>   the Department of Justice, concerning the Agreements or any terms of the Agreements.

We ask that you disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b). We also ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

### III.  Application for expedited processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the document sought because the information it contains is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

#### A.  *The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute was established at Columbia University to defend and strengthen the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission.[19] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute performs. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

#### B.  *The records sought are urgently needed to inform the public about actual or alleged government activity.*

The documents sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The requested records relate to agreements law firms reached with the Trump administration to avoid retaliation for

---

[19] Mike McPhate, *Columbia University to Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M-LUAD; James Rosen, *New Institute Aspires to Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K-FPED.

6

their representation of President Trump's adversaries and disfavored causes. The Trump administration's attacks on national law firms are ongoing, with no sign that these attacks will stop.[20]

President Trump's executive orders have been the subject of widespread debate, and several employees of firms that entered into agreements with the administration have resigned in protest.[21] Yet, the lack of transparency surrounding these agreements leaves many questions unanswered. For example, a letter from members of Congress sent to several firms explained that more information about the exact terms of these agreements is necessary to determine whether they comport with federal and state laws.[22]

There is heightened public interest in understanding the full scope of these agreements. Because the agreements and related records remain secret, it is not possible for the public to accurately discern whether the agreements violate the First Amendment or other state and federal laws. These records are urgently needed to understand the scope of the agreements and allow for fully informed public scrutiny.

For these reasons, the Knight Institute is entitled to expedited processing.

### IV. Application for waiver or limitation of fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested record is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the record would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial

---

[20] *See* Charlie Savage, Maggie Haberman, Jonathan Swan, & Michael S. Schmidt, *Trump Escalates Use of Official Power to Intimidate and Punish His Perceived Foes*, N.Y. Times (Apr. 10, 2025), https://perma.cc/2DEF-M7EA.

[21] *See* Ryan J. Reilly, *Furor Over Trump's Targeting of Law Firms Heats Up with Court Fight and Ad Campaign*, NBC News (Apr. 24, 2025), https://perma.cc/92VU-AW7U; Matthew Goldstein, Jessica Silver-Greenberg, & Michael S. Schmidt, *Inside Elite Law Firms, Protests and Quitting After Trump Deals*, N.Y. Times (Apr. 2, 2025), https://perma.cc/A96W-NVUW.

[22] *See* Letter from Members of Congress to Brad S. Karp, Managing Partner, Paul Weiss (Apr. 24, 2025), https://perma.cc/A7MA-EKX9.

requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citations omitted).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute's research program brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms, including in scholarly publications and in short-form essays.

The Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Institute meets the statutory definition of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. v. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 29 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920 (ABJ), 2015 WL 5120863 (D.D.C. Aug. 28, 2015); *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

\*   \*   \*

8

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of it.

/s/ Allie Schiele
Allie Schiele
Katie Fallow
Knight First Amendment Institute
　at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
allie.schiele@knightcolumbia.org
katie.fallow@knightcolumbia.org
